## UNITED STATES v. SEARSON.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

No. 6328.

Public lands ☞120—Government held entitled to cancellation of patent for homestead.

Evidence *held* to entitle the United States to cancellation of a patent for a homestead entry on the ground that the entryman did not reside on the land for the required time, and that the land officers were misled and deceived by false proofs.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit in equity by the United States against Edwin A. Searson. Decree for defendant, and the United States appeals. Reversed.

Don W. Stewart, Asst. U. S. Atty., of Lincoln, Neb. (James C. Kinsler, U. S. Atty., of Omaha, Neb., on the brief), for the United States.

E. D. & F. A. Crites, of Chadron, Neb., and Horth & Ryan, of Grand Island, Neb., for appellee.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. This suit was brought in May, 1920, to cancel a patent issued to appellee Searson, conveying to him 640 acres in Cherry County, Nebraska, pursuant to his homestead entry. The ground on which it is sought to avoid the patent is that the entryman did not comply with the statute, section 4532 U. S. Comp. Stats., in actually residing upon the land for the required time, that his proof in that respect was false and the land officials were misled and deceived thereby and the patent issued because of that deception. The entry was made at the Land Office February 27, 1914, and the testimony of the entryman and his sustaining witnesses represented that Searson established actual residence on the land in September, 1914, he giving the date as being September 20, one of his witnesses as of September 7 and the other as of September 25 of that year. This testimony was presented to the Land Office in October, 1915, Searson's prior military service making it necessary under the statute that he actually reside upon the land only one year before making final proof. In reply to the question to Searson and each of his witnesses, whether he had resided continuously on the homestead since establishing his residence thereon, they each answered that he had been absent therefrom from early in July, 1915, the dates being respectively stated as from July 1st,

3d, and 5th to late in September of that year. No other absences were disclosed in the final proof; and it is the contention of appellant that the proof in that respect was false and misleading. Searson was a witness at the trial. From his testimony and that of other witnesses these facts appear:

About September 15, 1914, he began the building of a one and a half story house on the homestead, and completed it that Fall. Its dimensions were 12x14 feet, containing two rooms, one above and one below. Later he put up a frame barn 14x16 feet, with a hay roof. He had two horses, a spring wagon and a buggy. He did some fencing on the land, and during the spring and summer of 1915 cultivated about ten acres in corn, potatoes and a garden. He also planted trees that spring. Neighbors assisted him in the building of the house, the fences, planting the trees and cultivating the ten acres. He had no farm implements of his own. In return for this he assisted his neighbors in their work. There is no controversy about the improvements which he made. The one issue relates to residence upon the land. Searson was alone. He taught school while there, about ten miles away from the homestead. The school opened in the Fall of 1914, he says about the first of November, and that it closed about May 20, 1915. Other witnesses give the opening of the school as in October. During the seven months of school he boarded with Mr. Jay, who lived about a half-mile from the schoolhouse, but he usually went back to the homestead on Friday evenings and remained there until Sunday afternoon, when he would return to Mr. Jay's. When the weather was bad he would remain at Mr. Jay's over the week-end. After the school term was out he remained upon the homestead until early in July, then left and did not return until the last of September. Early in the following month he made his final proof, and from the time of his return in late September until February, 1916, he was either at the homestead or stopping with others in the neighborhood. After final proof he disposed of the improvements on the homestead, and in February, 1916, put his personal effects in the wagon and drove away, and has never returned. The witness who traded for the improvements testified that some of them might have been moved away in the Fall of 1915. They were all taken off later.

Under the most liberal view that can be taken in favor of appellee the conclusion is unavoidable that beginning with and following the date on which actual residence was established he did not actually reside upon the homestead for as much as six months before making his final proof; and there can be no doubt that the land office officials were misled and deceived in that respect. His subsequent conduct in disposing of the improvements shortly after final proof raises serious doubt whether he at any time intended in good faith to comply with the statute in acquiring title to the land. It was the obvious duty of the court to cancel the patent, and it erred in dismissing the bill.

Reversed with directions to enter decree as prayed.